UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOLOMON ADU-BENIAKO, M.D.,

        Plaintiff,

v.                             Civil Case No. 21-12410
                                   Honorable Linda V. Parker

MEDICAL BOARD OF
CALIFORNIA and
AMERICAN MEDICAL ASSOCIATION,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AMERICAN MEDICAL ASSOCIATION'S MOTION TO DISMISS AND SUA SPONTE DISMISSING PLAINTIFF'S CLAIMS AGAINST DEFENDANT MEDICAL BOARD OF CALIFORNIA PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(m)

Plaintiff initiated this lawsuit against Defendants on October 8, 2021, alleging that Defendants published defamatory statements concerning Plaintiff's conduct in the practice of medicine. (ECF No. 1.) The matter is presently pending before the Court on a motion to dismiss pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure, filed by Defendant American Medical Association ("AMA"). (ECF No. 8.) In the motion, AMA also asks the Court to enjoin Plaintiff from filing any further actions against it without first obtaining leave of court. The motion has been fully briefed. (ECF Nos. 10, 12.) Having reviewed the parties' filings, the Court concludes, for the reasons detailed below,

that it lacks personal jurisdiction over AMA.  The Court is therefore dismissing

without prejudice Plaintiff's claims against this defendant.  However, the Court

does not find the requested injunction appropriate at this time.

Further, when Plaintiff apparently failed to serve Defendant Medical Board

of California ("MBC") by April 19, 2022, the Court issued an order requiring

Plaintiff to show cause in writing, within fourteen days, as to why his claims

against this defendant should not be dismissed without prejudice.  (ECF No. 14.)

While Plaintiff responded to the show cause order on April 22, by filing in part

tracking information from the United States Postal Service ("USPS") (ECF No.

16), this documentation does not reflect proper service of Plaintiff's Complaint or

the summons on MBC.  Plaintiff has taken no action to otherwise prosecute this

action against MBC.  The Court, therefore, is sua sponte dismissing Plaintiff's

claims against MBC without prejudice.

## I.      Applicable Standard to Review AMA's Motion

AMA argues that the Court lacks *personal* jurisdiction over it and that

Plaintiff fails to state viable claims against it.[1]  "When personal jurisdiction is at

issue, it must be settled before reaching the merits of the case."  *Innovation*

---

[1] Plaintiff appears to misunderstand the basis on which AMA seeks dismissal, as he focuses on the Court's subject matter jurisdiction in his response.  (*See, e.g.*, ECF No. 10 at Pg ID 254, 261.)

2

*Ventures, LLC v. Custom Nutrition Laboratories, LLC*, 912 F.3d 316, 332 (6th Cir. 2018) (citing *Bird v. Parsons*, 289 F.3d 865, 872-73 (6th Cir. 2002)).

The plaintiff has the burden of establishing the court's jurisdiction over a defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). To defeat a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction. *See id.* A prima facie showing requires the plaintiff to "demonstrate facts which support a finding of jurisdiction[.]" *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). Where there is no evidentiary hearing on the matter, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

Additionally, in a case filed by a pro se plaintiff, the court must liberally construe the plaintiff's pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the court cannot act as an advocate for a pro se litigant, who must comply with the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). "[T]he less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support

3

conclusory allegations." *Perry v. UPS*, 90 F. App'x 860, 861 (6th Cir. 2004) (citing *Wells*, 891 F.2d at 594).

## II.    Factual and Procedural Background

Plaintiff is a medical doctor practicing in Michigan.  AMA is an Illinois corporation, with its principal place of business in Illinois.  (ECF No. 1 at Pg ID 89.)  MBC is a California corporation, with its principal place of business in California.  (*Id.*)

Plaintiff provides minimal factual details in his Complaint as relevant to AMA and MBC (collectively "Defendants").  He does allege that Defendants "have maliciously produced and published libelous statements about the Plaintiff" since about June 5, 2020.  (*Id.* ¶ 5.)  Plaintiff cites to three exhibits to the Complaint as purportedly containing the statements.  (*Id.* at Pg ID 90, ¶ 8.)  These exhibits contain:

- Documents filed by Plaintiff and the Michigan Department of Licensing and Regulatory Affairs ("LARA") in administrative proceedings involving Plaintiff before LARA's Bureau of Professional Licensing Board of Pharmacy Disciplinary Committee ("Board of Pharmacy"), including the January 19, 2018 administrative complaint filed by LARA (*id*. Pg ID 93-137);

- A January 19, 2018 order summarily suspending Plaintiff's controlled substance license and drug control-location licenses issued by the Board of Pharmacy (*id*. at Pg ID 138);

- A January 18, 2018 administrative complaint filed by LARA in a matter involving Plaintiff before LARA's Bureau of Professional Licensing Board

4

of Medicine Discipline Subcommittee ("Board of Medicine") (*id.* at Pg ID 141-151); and

- An administrative law judge's March 23, 2018 order dissolving the Board of Pharmacy's summary suspension (*id*. at Pg ID 153-165).

None of the exhibits were authored by or reference Defendants.  However, the exhibits themselves, in combination with the briefs related to AMA's motion to dismiss, provide additional factual details potentially relevant to Plaintiff's current claims.

The administrative complaints filed by LARA in 2018 arose from prescriptions filled using Plaintiff's credentials.  Based on its review of data from the Michigan Automated Prescription System ("MAPS"), which LARA maintained reflected suspicious prescribing behavior, LARA claimed Plaintiff was prescribing controlled substances for other than legitimate medical use and in dereliction of his professional duties.  Plaintiff maintains that someone in his office fraudulently used his credentials to prescribe the controlled substances.

The Board of Medicine eventually suspended Plaintiff's medical license for six months and one day, beginning May 5, 2019, and fined him $15,000.00.  (ECF No. 10 at Pg ID 252.)  The Board of Pharmacy revoked Plaintiff's controlled-substance and drug-control-location licenses and fined him $10,000.  (*Id*.) Plaintiff's appeal of these decisions were rejected by the Michigan Court of

Appeals, Michigan Supreme Court, and United States Supreme Court.  (ECF No. 8-2 at Pg ID 223-37; ECF No. 8-3 at Pg ID 239; ECF No. 8-4 at Pg ID 243.)

Plaintiff asserts in response to AMA's motion that "LARA enlisted the help of . . . conspirators," which included Defendants.  (ECF No. 10 at Pg ID 252.)  He claims Defendants "hurriedly arranged 'sham Nuremberg trials'" and "presented and used fictitious, doctored administrative complaint [sic] during the sham trials." (*Id.*)  The documents attached to Plaintiff's response brief, which he cites to support these assertions, are documents from the Michigan administrative proceedings, some of which Plaintiff also attached to his Complaint.  (*See* ECF Nos. 10-1, 10-2, 10-3.)  Plaintiff further asserts that he "was then published on several websites to defame him."  (ECF No. 10 at Pg ID 252-53.)  Plaintiff does not identify the websites or the contents of the alleged publications.

Based on the State of Michigan's administrative decisions, the United States Drug Enforcement Agency ("DEA") issued a January 3, 2020 order revoking Plaintiff's federal certification of registration to prescribe controlled substances effective March 14, 2020.  *See* Federal Register, *Adu-Beniako v. DEA*, No. 20-cv-12402 (E.D. Mich. filed Feb. 26, 2021), ECF No. 13-3 at Pg ID 132.  In December 2020, AMA suspended Plaintiff.  (ECF No. 10 at Pg ID 253.)  MBC suspended Plaintiff medical license, as well.  (*Id.*)

Since that time, Plaintiff has filed several lawsuits in this District related to his suspensions.  On August 13, 2020, he filed a lawsuit against the medical assistant who he claims was fraudulently using his prescribing credentials.  *Adu-Beniako v. Cross*, No. 20-cv-12187, 2020 WL 7346212 (E.D. Mich. Aug. 13, 2020), *report & recommendation adopted in* 2020 WL 7338560 (E.D. Mich. Dec. 14, 2020).  That lawsuit was dismissed without prejudice for lack of federal subject matter jurisdiction.  *Id.* at *2.

On August 29, 2020, Plaintiff filed a complaint against the DEA and DEA Agent Patrick Reimann, claiming that the revocation of his federal certificate of registration resulted from their fraud and misconduct.  *Adu-Beniako v. Reimann*, No. 20-cv-12402, 2021 WL 4319586, at *1 (E.D. Mich. Apr. 27, 2021), *report & recommendation adopted in* 2021 WL 4310612 (E.D. Mich. Sept. 22, 2021).  The court concluded that Plaintiff lacked standing to assert some of his claims, that subject matter jurisdiction was lacking as to other claims because Plaintiff failed to allege exhaustion of his administrative remedies as required under the Federal Tort Claims Act ("FTCA") and because the claims were time-barred under the FTCA, and that federal law required Plaintiff to bring his remaining claim in the federal circuit court of appeals.  *Id.* at *2.

Plaintiff next sued MBC, AMA, LARA, DEA, Reimann, the Detroit DEA, and LARA Acting Director Cheryl Wykoff Pezon, alleging that they maliciously

7

published libelous statements about the frequency in which Plaintiff prescribed controlled substances. *Adu-Beniako v. Med. Bd. of Calif.*, No. 21-cv-11329, 2021 WL 5541934, at *1 (E.D. Mich. Sept. 1, 2021), *report & recommendation adopted in* 2021 WL 4487968 (E.D. Mich. Sept. 30, 2021).  That lawsuit also was dismissed without prejudice for lack of subject matter jurisdiction because no federal claim appeared in the complaint and diversity jurisdiction was lacking. *Id.* at *3.

Plaintiff thereafter filed a lawsuit in Michigan state court against Pezon, Reimann, and the DEA, which Reimann thereafter removed to federal court. *Adu-Beniako v. Pezon*, No. 21-cv-12788, 2022 WL 1397200, at *2 (E.D. Mich. Apr. 12, 2022), *report & recommendation adopted in* 2022 WL 1342714 (E.D. Mich. May 3, 2022).  In that case, Plaintiff claimed the defendants made false and defamatory statements that Plaintiff improperly administered controlled substances and conspired against him. *Id.*  The court dismissed Plaintiff's claims against the DEA and Reimann with prejudice and remanded his claims against LARA and Pezon to state court. *Id.* at *7.

The pending lawsuit followed.

8

## III.   Personal Jurisdiction as to AMA

### A.   Generally

Personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (brackets omitted) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). "Where the state long-arm statute extends to the limits of the due process clause," as is the case with Michigan's statutes, "the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process."[2] *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003); *see also Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1216 (6th Cir. 1989) (indicating that Michigan's long-arm statute "extend[s] to the outermost boundaries permitted by the due process clause").

---

[2] Michigan's long-arm statute permits the exercise of limited personal jurisdiction arising from an act which causes "consequences to occur in the state[] resulting in an action for tort."  Mich. Comp. Laws § 600.712(2).  Here, Plaintiff, who is a Michigan citizen, alleges that he suffered injury due to AMA's allegedly defamatory statements.  This suffices to confer limited personal jurisdiction under the Michigan long-arm statute with respect to Plaintiff's tort claims, *provided* the requirements of due process are satisfied.

9

**B.     Purposeful Availment**

Under Sixth Circuit law, to comport with due process:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)

(quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

The Sixth Circuit and Supreme Court have explained the "purposeful availment"

requirement as follows:

"Purposeful availment," the "constitutional touchstone" of personal jurisdiction, is present where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 . . . (1985) (emphasis in original), and where the defendant's conduct and connection with the forum are such that he "'should reasonably anticipate being haled into court there.'"  *Id.* at 474 . . . (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 . . . (1980)).  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"  *Burger King Corp.*, 471 U.S. at 475 . . . (internal citation omitted).

*Neogen*, 282 F.3d at 889.  " 'Purposeful availment' is something akin either to a

deliberate undertaking to do or cause an act or thing to be done in Michigan or

conduct which can be properly regarded as a prime generating cause of the effects

10

resulting in Michigan, something more than a passive availment of Michigan

opportunities." *Lifestyle Lift Holding Co. v. Prendiville*, 768 F. Supp. 2d 929, 934

(E.D. Mich. 2011) (quoting *Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp.

2d 806, 811 (E.D. Mich. 2000)).

### C.    Internet Libel Jurisdiction – *Zippo* & *Calder*

Plaintiff's claims against AMA are premised on "publi[cations] on several

websites to defame him."[3]  (ECF No. 10 at Pg ID 253.)  The Sixth Circuit has

_____

[3] In his Complaint, Plaintiff also refers to violations of his civil and due process rights and tortious interference; however, the pleading is devoid of facts to support these claims against the AMA.  Moreover, as to the alleged violations of Plaintiff's constitutional rights, he does not allege and there are no facts suggesting that AMA is a state actor as required to prove those claims.  *See Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982)) ("As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments."). Further, Plaintiff alleges no facts to conclude that personal jurisdiction over AMA can be exercised under Michigan's general personal jurisdiction statute.  *See* Mich. Comp. Laws § 600.711 (providing for the exercise of personal jurisdiction over corporations incorporated in the State, that have conferred consent, or "carry[] on . . . continuous and systematic part of its general business within the state"). And Plaintiff does not allege facts suggesting that these claims arose out of any of the relationships set forth in the State's limited personal jurisdiction statute.  *Id.* § 600.715 (providing for limited personal jurisdiction where the claims arose from the defendant's (1) "transaction of any business within the state"; (2) "doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort"; (3) "ownership, use, or possession of any real or tangible personal property situated in the state"; (4) "[c]ontracting to insure any person, property, or risk located within th[e] state"; and (5) "[e]ntering into a contract for services to be performed or for materials to be furnished in the state[.]").

assessed personal jurisdiction in internet libel cases by evaluating the interactivity of the particular website under the sliding scale established in *Zippo Manufacturing Company v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See, e.g., Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005) (citing *Neogen Corp*, 282 F.3d at 890). The *Zippo* sliding scale "distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site." *Cadle*, 123 F. App'x at 678. The first category is sufficient to confer jurisdiction; the latter is not. *Lifestyle Lift Holding*, 768 F. Supp. 2d at 934 (citations omitted). In between these two categories are websites "where information can be exchanged between the viewer and the host computer." *Id.* (quoting *Zippo*, 952 F. Supp. at 1124). "In such a case, the court examines the level of interactivity and the commercial nature of the exchange of the information." *Id.*

Plaintiff fails to identify the websites on which he was allegedly defamed by AMA. The exhibits attached to his response brief, which contain many of the same exhibits attached to his Complaint, do not appear to be materials posted on any website. Moreover, they were neither authored by nor mention AMA. Plaintiff does not provide any characteristics of the websites where the defamatory statements were published. He therefore fails to show that they are the type of

internet sites that can subject AMA to specific personal jurisdiction under the *Zippo* sliding scale.[4]

The Sixth Circuit also has assessed personal jurisdiction in internet libel cases by applying the "effects test" announced in *Calder v. Jones*, 465 U.S. 783 1984).  *See, e.g., Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119-20 (6th Cir. 1994); *Cadle*, 123 F. App'x at 679; *Koch v. Local 438, UAW*, 54 F. App'x 807, 810 (6th Cir. 2002).  In *Calder*, an actress filed a libel action in California against two Florida-based National Enquirer employees: the writer of the article and the president and editor of the publication.  465 U.S. at 784.  The Supreme Court concluded that California had personal jurisdiction over the defendants, reasoning:

> The allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources, and the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her

---

[4] Presumably the publications were on AMA's website: *https://www.ama-assn.org/*.  In addition to making information available to viewers, the website also allows physicians to access their profile and nonphysician customers to purchase AMA physician profiles. *See https://commerce.ama-assn.org/amaprofiles/*.  The website also provides a link to a separate website where an apparently separate entity, AMA Insurance, offers various types of insurance to physicians. *See https://amainsure.com/*.  The website therefore appears to fall into the "middle ground" category of website interactivity.  However, Plaintiff offers nothing to show that AMA interacted with and/or sold products to residents of Michigan through the website.  Further, Plaintiff's claims do not arise from that potential activity.

> professional reputation, was suffered in California.  In sum, California
> is the focal point both of the story and of the harm suffered.

*Id*. at 788-89 (footnote omitted).  The Court distinguished the defendants' activities

from those of an employee who works on a product which subsequently causes

harm in another state, explaining that the defendants' "actions were expressly

aimed at California."  *Id.* at 789.  As the Court explained, they "wrote and . . .

edited an article that they knew would have a potentially devastating impact upon

[the plaintiff].  And they knew that the brunt of that injury would be felt by [the

plaintiff] in the State in which she lives and works and in which the National

Enquirer has its largest circulation."  *Id*. at 789-90.

   *Calder* has been characterized as establishing an "effects test," by which the

exercise of personal jurisdiction is proper if the defendant's out-of-state conduct

has sufficient "effects" in the forum state, resulting in the "brunt of the harm"

being felt there.  *Air Prods. & Control, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544,

552 (6th Cir. 2007) (internal quotation marks and citation omitted).  However, the

Sixth Circuit has "narrowed the application of the *Calder* 'effects test,' such that

the mere allegation of intentional tortious conduct which has injured a forum

resident does not, by itself, always satisfy the purposeful availment prong."  *Id.*

(citing cases).  Instead, courts consider the extent to which the defendant

"expressly aimed its tortious conduct at the forum" and whether the "plaintiff's

forum state was the focus of the activities of the defendant out of which the suit

14

arises." *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n.1 (6th Cir. 2005) (citing cases). For example, in *Reynolds*, the Sixth Circuit made a particularized inquiry of the relations and dealings between the parties to determine if the alleged intentional tortious conduct causing injury to the plaintiff in Ohio rendered the defendant subject to the forum's jurisdiction. 23 F.3d at 1120.

In *Reynolds*, the plaintiff, an athlete residing in Ohio, sued an international sports organization that published a press release stating that the athlete had been drug tested following a competition in Monte Carlo, Monaco, and that the test revealed a banned substance. *Id*. at 1112. The release further indicated that the athlete had been suspended from the organization and offered a hearing. *Id*. The Sixth Circuit distinguished *Calder* as follows:

> First, the press release concerned Reynolds' activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not publish or circulate the report in Ohio; Ohio periodicals disseminated the report. Fifth, Ohio was not the "focal point" of the press release. The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction. *World-Wide Volkswagen Corp.*, 444 U.S. at 295 . . .. Finally, although Reynolds lost Ohio corporate endorsement contracts and appearance fees in Ohio, there is no evidence that the IAAF knew of the contracts or of their Ohio origin.

*Id.*

Here, Plaintiff fails to allege details sufficient to conclude that AMA "expressly aimed its tortious conduct at [Michigan]" or that Michigan "was the focus of the activities of [AMA] out of which the suit arises." *See Scotts*, 145 F. App'x at 113 n.1.  Plaintiff indicates that AMA published some form of statement to some unidentified websites.  From the bare-boned allegations, the Court cannot conclude that any statements concerned Plaintiff's activities in Michigan or had any connection to Michigan.  Nor can the Court conclude that AMA intentionally published the statements in Michigan as opposed to posting statements on a website that could be viewed nationally and even globally.  As the Sixth Circuit has expressed, "[t]he law does not require that people avoid using the internet altogether in order to avoid availing themselves of the laws of every state." *Cadle*, 123 F. App'x at 680 (citing *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) ("finding that Columbia University's maintenance of a website and internet message board, on which one of its professors posted an article that criticized the Texas plaintiff, was insufficient to confer personal jurisdiction in Texas over the university or the professor, because the 'article written by Lidov about Revell contains no reference to Texas, does not refer to the Texas activities of Revell, and it was not directed at Texas readers as distinguished from readers in other states.'")).

16

For these reasons, the Court concludes that this forum lacks personal

jurisdiction over AMA.  The Court, therefore, does not reach the merits of

Plaintiff's claims against AMA.  For that reason, and because no previous court

has ruled that Plaintiff's claims against AMA are frivolous,[5] the Court declines to

enjoin Plaintiff from filing any further action against the AMA related to this

matter.

**IV.    Service Over MBC**

Rule 4(m) of the Federal Rules of Civil Procedure provides in relevant part:

> If a defendant is not served within 90 days after the complaint is filed,
> the court—on motion or on its own after notice to the plaintiff—must
> dismiss the action without prejudice against that defendant or order
> that service be made within a specified time. But if the plaintiff shows
> good cause for the failure, the court must extend the time for service
> for an appropriate period. This subdivision (m) does not apply to
> service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to
> service of a notice under Rule 71.1(d)(3)(A).

As indicated earlier, on April 19, 2022, this Court provided notice to Plaintiff that

it would dismiss his claims against MBC for failure to effectuate service unless he

established good cause for the failure.  (ECF No. 14.)  Plaintiff responded by *inter*

---

[5] The only previous action in which Plaintiff included AMA as a defendant, Civil
Case No. 21-cv-11329, was dismissed for lack of subject matter jurisdiction.  This
does not mean, however, that any future attempt by Plaintiff to sue AMA would
survive a motion to dismiss.  In fact the Court believes the claims would not
survive for some of the reasons noted in this decision.  Moreover, attempting to sue
AMA in this forum where this Court has held that personal jurisdiction is lacking
may subject Plaintiff to sanctions.

*alia* filing USPS tracking documents reflecting: (a) service via certified mail of an

unidentified item to an unidentified individual at 11:12 a.m. on December 13, 2021

at an unidentified address "in ZIP Code 95800"; (b) service via certified mail of an

unidentified item to an unspecified address in West Sacramento, California at 3:55

p.m. on December 13, 2021; and (c) retrieval of an unidentified item at a postal

facility in Chicago, Illinois at 2:02 p.m. on December 17, 2021.  (ECF No. 16.)

      Neither Rule 4 of the Federal Rules of Civil Procedure nor Michigan Court

Rule 2.105—which is applicable pursuant to Rule 4—authorize service of a

summons and complaint on MBC by mail, only.  *See* Fed. R. Civ. P. 4(h); Mich.

Ct. R. 2.105(C).  As such, Plaintiff has not properly served MBC.  Plaintiff

maintains that "[a]ll the Defendants have been informed"—presumably of this

lawsuit.  (ECF No. 15 at Pg ID 373.)  However, the Sixth Circuit has consistently

held that "actual knowledge of the lawsuit does not substitute for proper service of

process under Rule 4" and that service of a summons and complaint must meet

constitutional due process and the requirements of the federal rules in order for

jurisdiction to exist over a defendant.  *See LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167

F.3d 320, 322 (6th Cir. 1999) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151,

1154-56 (6th Cir. 1991)).  The Court is therefore dismissing Plaintiff's claims

against MBC pursuant to Rule 4(m).

      Accordingly,

**IT IS ORDERED** that Defendant American Medical Association's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** in that the Court concludes that Plaintiff's claims against AMA are subject to dismissal without prejudice for lack of personal jurisdiction pursuant to Rule 12(b)(1). The Court therefore does not reach the merits of Plaintiff's claims and declines to enjoin Plaintiff from filing any further lawsuits against AMA.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Medical Board of California are dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 20, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 20, 2022, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager